

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| RAYMUNDO CARRANZA, | § | No. 08-16-00298-CR |
| Appellant, | § | Appeal from the |
| v. | § | 409th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20150D00299) |
| | § | |

# **O P I N I O N**

Raymundo Carranza was convicted by a jury of intoxication manslaughter with a vehicle and sentenced to seventeen years' imprisonment. In eleven issues, Carranza contends:

1. The evidence was legally insufficient for a rational jury to find him guilty of intoxication manslaughter;

2. The trial court erred in that it failed to define the offense of intoxication manslaughter in the abstract portion of the court's charge;

3. The trial court erred by failing to include an instruction on concurrent causation in application paragraph of the court's charge;

4. The trial court abused its discretion in allowing the State to present retrograde extrapolation evidence;

5. He received ineffective assistance of counsel because his trial counsel failed to ask certain questions of the venire during voir dire;

6. He received ineffective assistance of counsel because his attorney failed to object to the lack of an instruction on concurrent causation in the application paragraph;

7. He received ineffective assistance of counsel because his attorney failed to request that a definition of intoxication manslaughter be included in the abstract portion of the charge;

8. He received ineffective assistance of counsel because his attorney failed to object to misstatements of the law by the State regarding concurrent causation;

9. He received ineffective assistance of counsel because his attorney failed to exclude the retrograde extrapolation evidence;

10. He received ineffective assistance of counsel because his attorney failed to exclude evidence that he was an intoxilyzer operator and had received training on intoxilyzers; and

11. He received ineffective assistance of counsel because his attorney failed to object to a receipt purporting to show the number of drinks he purchased on the evening in question.

For the following reasons, we affirm.

## BACKGROUND

At around 3:30 in the morning, Julian Saucedo and his mother, Irma Ortiz, were driving eastbound down Spur 601 looking for a cellphone. Saucedo believed he had left the phone on his mother's car's hood earlier in the day and they were attempting to find it by driving slowly down the spur. Ortiz was traveling at about five miles-per-hour on the shoulder while Saucedo used a flashlight to search for his phone and called it using his mother's phone. As they were searching they came upon a vehicle parked on the shoulder but sticking partly into the right lane of the spur. As they drove slowly around the parked vehicle they saw a man crouching near the front driver's side of the vehicle changing the tire. That man was Richard Lopez, whose death underlies this case.

2

About five to ten minutes later, Saucedo decided to give up the search for his cellphone. He and his mother exited Spur 601, made a U-turn, and proceeded westbound back up Spur 601 toward home. As they were driving back, they noticed a Honda Ridgeline truck on the opposite side of the spur, heading eastbound. It was apparent to Saucedo the truck had been in a crash; the passenger-side headlight was knocked out and hanging cockeyed and the passenger-side fender was popped out and hanging loosely. Saucedo made a comment to Ortiz about the damage as the two continued home. As they came around a curve of the spur, Saucedo saw Lopez lying in the road on the eastbound lane. Saucedo shouted to his mother to pull over, and as she did he jumped out of the car and ran to Lopez, crossing over the median guardrail to reach the other lane. As he was running he called 911 with his mother's cellphone. A few other drivers stopped as Saucedo reached the body and gathered around. The 911 operator directed Saucedo to check Lopez's pulse and airway, but he was already dead.

Saucedo rose from Lopez's body and as he did he saw the Honda Ridgeline returning westbound on the other side of the spur. He told the 911 operator about the truck and attempted to get the driver's attention by waving his hand in the air. The truck slowed but did not stop. Officers eventually arrived on the scene and took a statement from Saucedo in which he relayed what he had seen.

About two hours later, while officers were still investigating the scene, a damaged Honda Ridgeline pulled up to Officer Eric Garcia, who had been directing traffic past the accident. The time was 5:33 a.m. The Appellant, Raymundo Carranza, exited the vehicle and approached Garcia. Carranza was a certified peace officer and an intoxilyzer operator with the El Paso Sheriff's Office. He told Garcia he thought he had hit something on the spur, possibly a guardrail,

3

and said he had been driving thirty to forty minutes trying to find a way back up onto the spur. Carranza also stated that he had had a few drinks but was not intoxicated. He followed up this remark by telling Garcia he had also taken an Ambien.[1] Garcia observed that Carranza had red, watery eyes, slightly slurred speech, and the odor of alcohol on his breath.

Carranza subsequently gave a video-recorded statement in which he told Officer Jose Talavera with the Special Traffic Investigations Unit that around 9:00 p.m. the evening before he had joined a group at a local steakhouse restaurant. He stated he drank alcohol at the restaurant but ate no food; specifically, he claimed he had had three Cape Cods and one beer. Carranza said that at about 1:15 or 1:30 a.m. he went to a small bar, whose name he could not recall, and had one more beer there before the bar closed. He also informed Officer Talavera he had paid for his drinks at Great American with his debit card. A receipt subsequently recovered from the restaurant showed Carranza had purchased a bucket of domestic beers, five Cape Cods, four Jaeger Bombs, and seven Kamikazis.

When the small bar closed at 2:00 a.m., Carranza drove to a Taco Bell on Transmountain Road. There, he had two or three tacos and a soda before heading home on eastbound Spur 601. When asked if he recalled anything significant happening on the spur, he stated he "recall[ed] hitting something." Carranza claimed he could not remember what he hit but he thought it was the center divider at the time because he did not see anything in his rearview mirror after the impact. He stated he took the next exit and made a U-turn. He reentered Spur 601, this time going westbound, to see what he had hit because he knew his vehicle was damaged. He claimed his vehicle began making noises as he drove back towards the scene, and he took the next exit to

---

[1] An Ambien is a sedative-hypnotic drug which has central nervous system depressant effects and is used in the short-term treatment of insomnia. https://www.accessdata.fda.gov/drugsatfda_docs/label/2016/019908s037lbl.pdf.

check on the damage. Carranza stated he pulled over near a Carl's Jr. and noticed his truck was losing fluids and overheating, so he waited there for the engine to cool before returning. He also stated he could not locate his cellphone at the time. After what he estimated to be thirty or forty minutes, he located his cellphone on the passenger-side floorboard, picked it up, and then drove back to the scene where he made contact with Officer Garcia. After speaking with Officer Garcia, Carranza gave consent to a blood draw, which was taken at 6:56 a.m. The blood draw revealed a blood-alcohol concentration of .10.

Carranza was indicted for intoxication manslaughter, manslaughter, and failing to stop and render aid. The failing to stop and render aid count was severed prior to trial. Carranza was convicted by a jury of intoxication manslaughter and sentenced by the jury to seventeen years' imprisonment. This appeal followed.

## DISCUSSION

### Sufficiency of the Evidence

In his first issue, Carranza contends the evidence was legally insufficient to prove his intoxication was the cause of Lopez's death. He asserts the evidence presented to the jury by the experts regarding the speed he was traveling was insufficient for the jury to rationally conclude the accident could have been avoided but for his intoxication.

#### *Standard of Review*

In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and will uphold the conviction if there is sufficient evidence for a rational fact finder to have found the defendant guilty beyond a reasonable doubt on all essential elements of the offense. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *Salinas v. State*, 163 S.W.3d 734,

5

737 (Tex.Crim.App. 2005).  The evidence is measured against the hypothetically correct jury charge.  *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex.Crim.App. 2009).  A hypothetically correct jury charge lists all elements of the offense, is consistent with the indictment, and does not unnecessarily increase the prosecution's burden of proof.  *Id*.  When the record supports conflicting inferences, we presume the fact finder resolved the conflicts in favor of the verdict and defer to that determination.  *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007).

### *Applicable Law*

A person commits the offense of intoxication manslaughter if the person:

> (1) operates a motor vehicle in a public place;

> (2) is intoxicated; and

> (3) by reason of that intoxication, causes the death of another by accident or mistake.

TEX.PENAL CODE ANN. § 49.08(a).

Section 6.04 of the Penal Code provides that a "but for" causal connection must be established between the defendant's conduct and the resulting harm.  TEX.PENAL CODE ANN. § 6.04(a); *see also Robbins v. State*, 717 S.W.2d 348, 351 (Tex.Crim.App. 1986).  If concurrent causes are present, the "but for" requirement is satisfied if:  (1) the defendant's conduct was sufficient by itself to have caused the harm, regardless of the existence of a concurrent cause; or (2) the defendant's conduct and the other cause together were sufficient to have caused the harm.  *Robbins*, 717 S.W.2d at 351.  For the defendant to be found not guilty as a result of a concurrent cause, the additional cause must be clearly sufficient, by itself, to produce the result and the defendant's conduct, by itself, clearly insufficient.  *Id.*

### *Analysis*

6

Carranza takes issue here solely with the sufficiency of the evidence to show his intoxication caused the fatal crash; specifically, with the experts' alleged inability to precisely demonstrate his speed at the time of the accident, which he claims was crucial to determining whether the accident was avoidable regardless of his intoxication.

Timothy Lovett, the State's accident reconstruction expert, testified he based his conclusions on review of evidence and data collected by the Special Traffic Investigations Unit. He opined that Lopez was likely crouched in front of his driver's side door attending to the front tire when the Honda Ridgeline struck his open door. The door, "like a bat," struck Lopez and threw him down the road. Lovett stated that because of the transference of the impact from the truck to the car door and from the car door to Lopez, there would be no blunt-force trauma. He testified Lopez's shoes were found near his front driver's side tire, which signified the most probable point of impact.[2] Lopez was found 100.3 feet away from that point. Blood and hair were found 26.6 feet from the point of impact, signifying the area where Lopez first contacted the ground after being thrown into the air. Lopez's location 73.7 feet from that point, Lovett relayed, indicated how far he rolled or slid across the pavement.

Lovett then explained several formulas used for determining the speed at which a pedestrian's body is thrown after being struck, from which the speed of the driver's vehicle could be determined after plugging-in the above-mentioned variables. He testified these formulas were generally accepted in the scientific community. The Barzeley formula produced a driving speed for Carranza's Honda Ridgeline of 42 mph. The Wood formula produced a range for his vehicle speed of between 30 and 47 mph. The Searle formula produced a range of between 37 and 44.4

---

[2] He elaborated that shoes come off a pedestrian when they are struck and will be very close if not right at the place of impact, "[as if] we . . . get knocked out of our shoes."

7

mph. Finally, a "slide" formula—based on Lopez's sliding distance of 73.7 feet—produced a vehicle speed of 44.6 mph. Based on his review of the results of the formulas, he opined that Carranza struck and killed Lopez while travelling at a speed of about 44 mph.

Lovett then discussed perception-reaction time, which he explained was the time necessary for a sober and alert person to identify a stimulus that has entered your perception, process the information, and react to a potential issue. He stated perception-reaction time has been scientifically established at 1.5 seconds. Lovett stated that based on the position of Lopez's vehicle on a curve of Spur 601, a driver coming around that curve would be able to first see Lopez's vehicle when he was 500 feet away. Based on this distance, a driver travelling at 44 mph with a sight line of 500 feet would have 7.7 seconds to take evasive action and avoid Lopez's vehicle— more than enough time according to the scientifically accepted perception-reaction time. He then stated that at 44 mph a sober, alert person would have "absolutely" been able to avoid colliding with Lopez's vehicle. Lovett further opined that there was nothing whatsoever in the evidence he reviewed to indicate Carranza was going over the posted speed limit of 60 mph on Spur 601, but that even at a speed of 65 mph, the collision could have been avoided by a sober, alert driver. He elaborated that it would not be until speeds of 75 to 80 mph that Lopez's vehicle would have become unavoidable.

Lovett noted that, based on STI's investigation of the scene, Carranza did not brake at all before colliding with Lopez's vehicle. He explained this was significant because perception-reaction time is inhibited with the introduction of alcohol in a person's system; that this was true because it is a central nervous system depressant, which inhibits a person's ability to process information. He testified that, in his opinion, Carranza could have been intoxicated at the time of

the collision based on the blood draw revealing he had a BAC of .10 nearly three hours after the crash. Lovett further stated that Carranza's intoxication could have been the cause of the collision and that in his opinion, it was the sole cause of the collision.

Carranza's experts testified differently and to the effect that the accident may have been unavoidable. On appeal, he points out his experts testified that while they stated they were capable of calculating his minimum speed based on the factors used by Lovett, they claimed they could not determine Carranza's actual speed with any scientific certainty. Without a definitive speed, Carranza argues, the jury could only have speculated that his intoxication was the but-for cause of the accident. He asserts that on cross-examination, Lovett was unable to scientifically explain partial-velocity transfers in the Searle formula, and he only replied that he did not agree with the conclusion reached by including partial-velocity transfers. Carranza also takes issue with Lovett's testimony in that the speed calculation Lovett arrived at, although methodologically sound, failed to consider additional variables Carranza contends were vital to the calculation, such as, "lateral avoidance, vehicle latency, limb movement,[] detection times . . . [and] the reality that not all people react the same." He cites nothing to show that the failure to consider these variables in this particular situation leads to results so speculative as to be unreliable; he simply cites two cases which stand for the general propositions that jury speculation and highly speculative or conclusory expert testimony are legally insufficient to support a conviction.[3] Carranza concludes

---

[3] *Winfrey v. State*, 323 S.W.3d 875, 882 (Tex.Crim.App. 2010)(for the general proposition that a conviction based upon juror speculation raises only a suspicion of guilt, which is constitutionally insufficient); *Walker v. State*, Nos. PD-1429-14, PD-1430-14, 2016 WL 6092523, at *14 (Tex.Crim.App. Oct. 19, 2016)(not designated for publication)(for the proposition that even when an expert's scientific methodology is sound, his opinion may be too speculative or conclusory to be probative for the purpose of a legal-sufficiency review, giving the example of an accident specialist being unable to explain how his conclusion that the car's wheel had detached before the accident was possible where the wheel was conclusively shown to have remained in the wheel well while the car continued to drive, cross over a median, and then collide with another car).

that, absent Lovett's "questionable" expert testimony, there is no other evidence from which the jury could conclude the accident was anything but unavoidable, thus negating his intoxication as the cause of the accident.

Carranza, however, has not shown that Lovett's testimony was so speculative as to be not probative for legal sufficiency purposes; he has instead offered the testimony of his own experts and concludes that testimony undermines Lovett's. It is firmly within the jury's province to resolve conflicts in testimony. *Clayton*, 235 S.W.3d at 778; *see also Thornton v. State*, 425 S.W.3d 289, 303 (Tex.Crim.App. 2014)(holding that a reviewing court should not act as a "thirteenth juror" by overturning a jury's credibility and weight determinations). Conflicting expert testimony is not sufficient for us to overturn a jury's duly presented verdict.

As to his contention that Lovett's testimony required the jury to speculate, the Court of Criminal Appeals has held that "an inference is a conclusion reached by considering other facts and deducing a logical consequence from them," while "[s]peculation is mere theorizing or guessing about the possible meaning of facts and evidence presented." *Hooper v. State*, 214 S.W.3d 9, 16 (Tex.Crim.App. 2007). Juries are permitted to draw multiple reasonable inferences as long as each inference is supported by evidence presented at trial. *Id.*, (*citing Jackson*, 443 U.S. at 318–19). Far from requiring them to speculate, Lovett's testimony exhaustively detailed his methodology, the different formulas he utilized, and the reasons for his conclusions based on the evidence presented. While Carranza argues that the testimony required speculation because his formulas produced different results, Lovett testified that based on his own review of the evidence and his knowledge and expertise, Carranza was travelling at 44 mph. Considering that the intoxication element was not seriously at issue where Carranza stipulated that his BAC was

10

.10 nearly three hours after the accident, and that he was driving a motor vehicle in public, the only element of intoxication manslaughter at issue was whether his intoxication caused Lopez's death. *See* TEX.PENAL CODE ANN. § 49.08(a). Based on Lovett's testimony, the jury could have drawn the reasonable inference that Carranza's intoxication was the only reason he failed to avoid striking Lopez's vehicle that night. Viewing the evidence presented to the jury in the light most favorable to its verdict, and weighing it against the hypothetically correct jury charge, the jury could have rationally found, beyond a reasonable doubt, that Carranza, while operating a motor vehicle in public, was intoxicated, and that because of his intoxication he accidentally struck and killed Lopez. *See Villarreal*, 286 S.W.3d at 327 (holding a hypothetically correct charge lists all elements of the offense, is consistent with the indictment, and does not unnecessarily increase the prosecution's burden of proof). Accordingly, the evidence was legally sufficient to convict Carranza of the offense of intoxication manslaughter. Issue One is overruled.

**Jury-Charge Error**

In Issues Two and Three, Carranza argues the trial court erred in failing to define "intoxication manslaughter" in the abstract portion of the charge (Issue Two), and the trial court erred in failing to apply the law of concurrent causation in the application paragraph of the charge (Issue Three).

***Standard of Review***

We review claims of jury-charge error by first determining whether an error exists in the charge. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex.Crim.App. 2005). If error exists in the charge, we must then analyze that error for harm. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex.Crim.App. 2003). Where, as here, the defendant failed to object to the charge, we review

11

the error under the egregious harm standard set out in *Almanza*. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984)(*overruled on other grounds by Rodriguez v. State*, 758 S.W.2d 787 (Tex.Crim.App. 1988)). Egregious harm occurs where the defendant suffered actual, rather than theoretical, harm, and where the error affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Warner v. State*, 245 S.W.3d 458, 461–62 (Tex.Crim.App. 2008). To determine whether jury-charge error is egregious, we must consider the entirety of the jury charge itself, the evidence, including the contested issues and weight of the probative evidence, the arguments of counsel, and any other relevant information revealed by the record as a whole. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex.Crim.App. 2007).

### *Applicable Law*

The duty of the trial court in charging the jury is to communicate to the jury each statutory definition that affects the meaning of an element of an offense. TEX.CODE CRIM.PROC.ANN. art 36.14; *see also Vasquez v. State,* 389 S.W.3d 361, 366 (Tex.Crim.App. 2012)("[t]he purpose of the trial court's jury charge is to instruct the jurors on all of the law that is applicable to the case."). The application paragraph of the jury charge applies the relevant penal law, abstract definitions, and general legal principles to the facts of the case and the indictment allegations. *Vasquez*, 389 S.W.3d at 366.

### *Analysis*

#### *Failure to Define "Intoxication Manslaughter"*

In Issue Two, Carranza contends the trial court should have defined "intoxication manslaughter" in the abstract portion of the charge. He did not request this instruction at trial and did not object to the trial court's failure to include it; therefore, he must show egregious harm to

merit reversal. *Almanza*, 686 S.W.2d at 171. The State concedes the failure to include the definition was error but contends the error did not cause egregious harm. The State points out that, while the abstract did not include a definition of intoxication manslaughter, the application paragraph does correctly instruct the jury on the elements of the crime. The application paragraph instructed the jury in relevant part as follows:

Paragraph A

Now if you find from the evidence beyond a reasonable doubt that on or about the 12th day of May, 2012, in El Paso County, Texas, the Defendant, RAYMUNDO CARRANZA,

did then and there operate a motor vehicle in a public place while intoxicated, and did by reason of such intoxication cause the death of another, namely, Richard Lopez, by accident or mistake, to wit: by causing the motor vehicle driven by the Defendant to collide with the driver door of the vehicle of Richard Lopez and thereby causing said driver door to strike Richard Lopez,

Or

Paragraph B

did then and there operate a motor vehicle in a public place while intoxicated, and did by reason of such intoxication cause the death of another, namely, Richard Lopez, by accident or mistake, to wit: by causing the motor vehicle driven by the Defendant to collide with Richard Lopez,

and it is further presented that the said Defendant used and exhibited a deadly weapon, to wit: a motor vehicle, during the commission of and immediate flight from said offense,

Then you will find the Defendant, RAYMUNDO CARRANZA, guilty as charged in Count I of the Indictment (Verdict Form A).

From this, the jury understood that to find Carranza guilty of intoxication manslaughter, it must find beyond a reasonable doubt that: (1) Carranza; (2) while operating a motor vehicle in a public place; (3) was intoxicated; and (4) because of that intoxication; (5) killed Lopez by accident or

13

mistake. This tracks the statutory elements of the offense. *See* TEX.PENAL CODE ANN. § 49.08(a).

Where the application paragraph correctly instructs the jury, an error in the abstract portion of the charge is insufficient to cause egregious harm. *Medina v. State*, 7 S.W.3d 633, 640 (Tex.Crim.App. 1999); *see also Plata v. State*, 926 S.W.2d 300, 302–03 (Tex.Crim.App. 1996)(holding that the inclusion of a merely superfluous abstraction never produces error in the court's charge because it has no effect on the jury's ability to fairly and accurately implement the commands of the application paragraph). Carranza's reliance on *Doyle*—a pre-*Almanza* case— to suggest that an error in the abstract results in egregious harm is misplaced. In *Doyle*, the Court of Criminal Appeals held that where "an entire element of the offense is omitted from the application paragraph[]" there is a violation of due process. *Doyle v. State*, 631 S.W.2d 732, 738 (Tex.Crim.App. [Panel Op.] 1980). The holding in *Doyle* does not support a finding of egregious harm under *Almanza* where the jury was properly instructed in the application paragraph on the elements it had to find beyond a reasonable doubt to find a defendant guilty of the charged crime. *Medina*, 7 S.W.3d at 640. Accordingly, Carranza has failed to demonstrate he was egregiously harmed by the failure to include a definition of intoxication manslaughter in the abstract portion of the charge. Issue Two is overruled.

*Concurrent Causation*

In Issue Three, Carranza argues the trial court erred when it failed to include an instruction on concurrent causation in the application paragraph. He also contends this error was compounded by the State in that it asserted the mere fact of intoxication coupled with the death of an individual was sufficient alone for intoxication manslaughter. He did not object to the charge.

14

Therefore, he must show he was egregiously harmed by the trial court's failure to include the instruction. *Almanza*, 686 S.W.2d at 171.

The State contends initially that Carranza was not entitled to an instruction on concurrent causation because there was no affirmative evidence that the way in which Lopez parked his car was clearly sufficient to have caused the accident and Carranza's actions were clearly insufficient. Officer Jose Talavera, who had been tasked with investigating Carranza's likely line of sight, testified it would have been difficult for anyone traveling the speed limit of 60 mph to have avoided hitting Lopez that night, based on the curvature of Spur 601 and the fact that Lopez was changing his tire in the lane instead of on the shoulder. Rene Lujan, an accident reconstructionist, testified that, based on the evidence he reviewed, a driver coming around the corner on Spur 601 would have difficulty seeing that Lopez's vehicle was in the driving lane instead of on the shoulder until getting "really" close to the vehicle. Jacob Baker, the defense's expert on accident reconstruction, testified that a reasonable, sober driver may have had a similar collision that night. A defendant is entitled to an instruction on any defensive issue raised by the evidence, whether that evidence is weak or strong, unimpeached or contradicted, and regardless of what the trial court may think about the credibility of the evidence. *Granger v. State*, 3 S.W.3d 36, 38 (Tex.Crim.App. 1999)(*citing Hamel v. State*, 916 S.W.2d 491, 493 (Tex.Crim.App. 1996). Regardless of the weight of the testimony of these witnesses, their testimony was some evidence that Lopez's act of parking his car partly in the lane of traffic caused the accident and Carranza's intoxication did not. Accordingly, Carranza would have been entitled to an instruction on concurrent causation. *Id*.

But, as noted, Carranza must demonstrate egregious harm to warrant reversal on this issue. To determine whether Carranza was egregiously harmed, we must examine: (1) the entire jury

15

charge; (2) the state of the evidence, including contested issues; (3) the arguments of counsel; and (4) any other relevant information contained in the record as a whole. *Gelinas v. State*, 398 S.W.3d 703, 705–06 (Tex.Crim.App. 2013).

The jury charge did not contain an instruction on concurrent causation in the application paragraph. But the abstract portion of the charge instructed the jury that "a person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." This language tracks the statutory definition of concurrent causation found in Section 6.04(a) of the Texas Penal Code. *See* TEX.PENAL CODE ANN. § 6.04(a).[4] The application paragraph instructed the jury to find Carranza not guilty if it held a reasonable doubt as to whether Carranza's intoxication was the cause of Lopez's death.

Causation was a disputed issue at trial. The State's expert, Lovett, testified that Carranza was travelling at 44 mph and could have easily avoided colliding with Lopez if he were sober and alert. He also opined that it would not be until speeds of 75 or 80 mph that the accident would become unavoidable. While one of Carranza's experts testified the accident might have been unavoidable at 60 mph, his experts also testified they could not calculate his speed with any scientific certainty. Lovett testified that alcohol inhibits a person's perception-reaction time because it is a central nervous system depressant, which inhibits a person's ability to process information. Another of the State's experts, Martha Mendoza, an El Paso Police Department

---

[4] "A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." TEX.PENAL CODE ANN. § 6.04(a).

16

toxicologist and intoxilyzer technical supervisor, testified that alcohol adversely affect a person's mental faculties and their abilities to focus, concentrate, multitask, process information, make necessary estimations of time and space, and exercise good judgment. Mendoza also testified that alcohol inhibits physical faculties such as a person's ability to coordinate movement of arms and legs, which are key driving skills. Carranza's blood draw revealed he had a BAC of .10 nearly three hours after the crash, a fact which he stipulated to. He also admitted to Officer Talavera he had been drinking that night, and while he claimed he had had only five drinks, a receipt recovered from Great American showed he had ordered a bucket of beer and sixteen other drinks. When Carranza approached Officer Garcia to report he thought he had "hit something," Garcia observed that Carranza had red, watery eyes, slightly slurred speech, and the odor of alcohol on his breath. He also told Garcia he had been drinking and then shortly followed up by mentioning he had taken an Ambien.

As to the arguments of counsel, the State explained the crime of intoxication manslaughter during jury selection as follows:

> [THE STATE]: Okay. So what I have to show is someone was operating a motor vehicle in a public place while intoxicated and that intoxication resulted in the death of someone. Right? So that is what you are looking for. Operated a motor vehicle in a public place while intoxicated and the intoxication resulted in a death while intoxicated. I think we have gone through that enough. And the intoxication resulted in the death of an individual.
> Okay. As long as any part of the death was a result of the DWI, then that is Intoxication Manslaughter. So you could have -- let's say you had this: Let's say, hypothetically, you had someone that is the driver of your vehicle and they have got a passenger that was not buckled in and they get into an accident while intoxicated and the passenger dies. Now, the passenger should have had his seatbelt on. Maybe the testimony is even that the passenger would have died if they had the seatbelt on, but they died because of intoxication as well. Do you see how both of those are working? So as long as part of it -- any part of it can be connected to the intoxication -- the defendant is responsible. It is not a civil type of situation where it's 50/50 or 70/30 or whatever that turns out to be. Does

17

> everyone understand that? If any part of that death is a result of the intoxication, then you have met the nexus.

Carranza also discussed the elements of intoxication manslaughter to the venire, explaining that the causation element required the State to prove the beyond a reasonable doubt that "the intoxication caused the death." He then gave a hypothetical wherein a driver with a BAC of .20 was stopped at a red light and was struck from behind by a motorcyclist. Carranza explained that even if the motorcyclist died, the driver could not be found guilty of intoxication manslaughter because his intoxication did not cause the motorcyclist's death. When a venire member commented that they thought the driver should still be guilty because he was over the legal BAC limit, the trial court admonished the jury that "the State will have to prove beyond a reasonable doubt [] that the intoxication was a cause of the death of an individual." Carranza then read the statutory definition of causation to the venire, telling it that "[a] person is criminally responsible if the result would not have occurred, but for his conduct, operating either alone or concurrently with another cause unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient."

In his opening statement, Carranza told the jury that the issue before it was whether his actions caused Lopez's death by reason of his intoxication and stated that "[b]ut for the defendant, Richard Lopez's condition and conduct of stopping in a lane of travel, changing his driver's front tire, the accident would not have happened." During the State's closing argument, the State discussed the evidence of each element of the offense and stated most of the elements were not in dispute—that the case "comes down to whether or not the defendant's intoxication caused the death of Richard Lopez." The State further stated that any part of the cause of Lopez's death that is directly attributable to Carranza's intoxication meant that his intoxication caused the death for

18

the purposes of the causation element.    The State also emphasized that, although Lopez was pulled out onto the lane of traffic while changing his tire and was also intoxicated, he had turned on his hazard lights to warn incoming vehicles; thus, the State argued, it was the fact that Carranza was intoxicated and not the actions of Lopez that caused Lopez's death that night.    Finally, the State again addressed concurrent causation during summation:

> [The State]: And what does causation say?  . . .    This is the law. Page three, last paragraph.    'A person is criminally responsible if the result would not have occurred but for his conduct.'    But for his conduct.    And then look a little bit further.    'Operating either alone or concurrently.'    Concurrently just means at the same time.    You have the conduct of the actor.    The actor being Mr. Carranza, the defendant.    The conduct of the actor concurrently -- or at the same time as some other thing that is going on.    What is the other thing going on?    Mr. Lopez. Where he is.    And it says unless the other thing was clearly sufficient, Mr. Lopez alone -- his conduct alone has to be clearly sufficient to cause his own death.    And Mr. Lopez's -- Mr. Carranza's conduct -- the defendant's conduct has to be clearly insufficient.    Nothing he did contributed to the death of Mr. Lopez.    That is what this says.    That is exactly what Ms. Demmler explained to you.

In his closing argument, Carranza argued that:

> Paragraph A alleges the facts as they were presented to you.    Now, what does that mean?    Does that mean that my client is guilty of Intoxicated Manslaughter?    The answer is no because the State still has to prove causation.    Now, not that my client's vehicle struck the door that caused the death.    No.    They have to prove that my client was intoxicated and because of that intoxication he made a mistake or caused an accident and that is where we have the dispute.    That is where the dispute arises because we are saying that that is not what happened.    It wasn't his intoxication that caused the accident.    It was Mr. Lopez's positioning of the vehicle in an area that was unsafe that was the cause of the accident.    It was his fault.    And I am going to say it to you and I am not shy about it.    It was his fault.    He should not have parked his vehicle there.    Why did he park it there?    Because he was drunk.

Balancing the *Almanza* factors—the entire jury charge; the state of the evidence, including the contested issues and weight of probative evidence; the arguments of counsel; and all other relevant information revealed by the record—Carranza has not shown egregious harm from the

19

lack of a concurrent-causation instruction in the application paragraph. The jury charge lacked an instruction on concurrent causation in the application, but the abstract had a definition which tracked the statute, and the jury was instructed in the application paragraph it had to find Carranza's intoxication caused Lopez's death beyond a reasonable doubt. The evidence presented did not tend to show that Carranza's conduct was clearly insufficient, by itself, to have caused Lopez's death or that Lopez's conduct, by itself, was clearly insufficient. Most importantly, however, contrary to Carranza's assertions on appeal, the State did not misstate the law regarding concurrent causation; as has been demonstrated, throughout the entire trial both parties repeatedly laid out the law of concurrent causation before the jury, presented evidence on the issue, and informed the jury what would need to be shown to support that defensive theory. Carranza was required to show actual, not just theoretical, harm to warrant reversal. *Warner*, 245 S.W.3d at 461–62. Because the jury was repeatedly—and correctly—told what the law of concurrent causation was, including in the abstract portion of the jury charge, its exclusion from the application paragraph, though erroneous, did not vitally affect Carranza's defensive theory, as would be required to show egregious harm. *Id.*, *see also Degrate v. State*, 86 S.W.3d 751, 754 (Tex.App.—Waco 2002, pet. ref'd)(finding no egregious harm where, despite lack of a concurrent-causation instruction in the application paragraph, both parties argued the theory to the jury, concurrent-causation was defined in the abstract, and the defendant's rebuttal evidence on the issue was weak). Accordingly, we do not find egregious harm. Carranza's third issue is overruled.

## Admission of Expert Testimony

In his fourth issue, Carranza argues the trial court abused its discretion in admitting the testimony of the State's expert witness regarding retrograde extrapolation evidence.

## Standard of Review

A trial court is given broad discretion in determining the admissibility of evidence. *Allridge v. State*, 850 S.W.2d 471, 492 (Tex.Crim.App. 1991). Accordingly, we review a trial court's admission or exclusion of evidence under an abuse of discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex.Crim.App. 2010). A reviewing court should not reverse a trial court's ruling that falls within the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990)(op. on reh'g). The erroneous admission of evidence is generally non-constitutional error, and non-constitutional error that does not affect substantial rights must be disregarded. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex.Crim.App. 2002); *Solomon v. State*, 49 S.W.3d 356, 365 (Tex.Crim.App. 2001). Substantial rights are not affected "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App. 1998).

To preserve error for review, a complaint must be "made to the trial court by a timely request, objection, or motion that . . . state[s] the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." *Pena v. State*, 353 S.W.3d 797, 807 (Tex.Crim.App. 2011)(*quoting* TEX.R.APP.P. 33.1(a)(1)(A)). The legal basis of a complaint raised on appeal cannot vary from that raised in the trial court. *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex.Crim.App. 2004)(*citing Euziere v. State*, 648 S.W.2d 700, 703–04 (Tex.Crim.App. 1983).

## Applicable Law

Under Rule 702 of the Texas Rules of Evidence, an expert witness may testify as to their opinion based on scientific knowledge if it will help the trier of fact to understand the evidence or determine a fact in issue. TEX.R.EVID. 702. The proponent of scientific evidence must show by clear and convincing evidence that the evidence is reliable. *Jackson v. State*, 17 S.W.3d 664, 670 (Tex.Crim.App. 2000). To show that the evidence is reliable, the proponent must show: (1) the validity of the underlying scientific theory; (2) the validity of the technique applying the theory; and (3) proper application of the technique on the occasion in question. *Id.*, (*citing Kelly v. State*, 824 S.W.2d 568, 573 (Tex.Crim.App. 1992)).

*Analysis*

Here, the State's expert witness, Martha Mendoza, was asked to respond to a hypothetical question regarding what Carranza's BAC would be at the time of the accident according to her retrograde-extrapolation analysis. She explained that retrograde-extrapolation analysis is accepted in the scientific community and calculates BAC at a point in time by using the Widmark Equation. Using the confirmed BAC taken from a blood test, certain variables are used to calculate the BAC at a prior point in time, such as how much and what type of alcohol was consumed, the defendant's gender and weight, the relevant distribution rates specific to the gender, and elimination rates on low and high ranges. Using the BAC of .10 obtained from Carranza's blood draw, as well as Carranza's gender and weight, Mendoza calculated that Carranza's BAC at the time of the accident was between .13 and .16. In response to a second hypothetical, she calculated his BAC at the time of the accident to be between .065 and .135. Before Mendoza testified to these calculations, Carranza objected on grounds that "[p]roper predicate has not been laid." The trial court overruled this objection.

22

As noted above, an objection must be reasonably specific enough to apprise the trial court of the legal basis of the objection. *Pena*, 353 S.W.3d at 807. But simply objecting that proper predicate has not been laid is insufficiently specific to preserve error; counsel must inform the court how the predicate is deficient. *Bird v. State*, 692 S.W.2d 65, 70 (Tex.Crim.App. 1985)(holding that an objection that proper predicate had not been laid was too general to preserve error and that counsel must inform the court "just how the predicate is deficient."); *Edwards v. State*, 497 S.W.3d 147, 163 (Tex.App.—Houston [1st Dist.] 2016, pet. ref'd)("[A]n objection to the admission of evidence must be reasonably specific enough so as to apprise the trial court of its legal basis, and a defendant must inform the trial court how the predicate is deficient; a mere objection of improper predicate is not sufficient."); *Scherl v. State*, 7 S.W.3d 650, 652 (Tex.App.—Texarkana 1999, pet. ref'd)("An objection to an improper predicate that fails to inform the trial court exactly how the predicate is deficient will not preserve error."). Accordingly, Carranza's objections to improper predicate did not preserve the error for our review.

Further, even assuming the trial court abused its discretion in admitting Mendoza's retrograde-extrapolation testimony, which we do not conclude, we have fair assurance after examining the record as a whole that the testimony did not influence the jury or at most had but a slight effect. Carranza contends he was harmed because Mendoza's analysis placed his BAC at nearly double the legal limit at the time of the accident, and he further contends the harm was obvious from his seventeen-year sentence when he had no prior convictions. But the issue of intoxication was not heavily contested at trial; the focus of the defense was on whether the accident was unavoidable that night due to visibility and Lopez's act of parking partly on the driving lane while changing his tire. There was ample evidence outside of Mendoza's retrograde extrapolation

23

testimony that Carranza was intoxicated that evening. Foremost was Carranza's intoxilyzer test revealing he had a BAC of .10 two hours and fifty-six minutes after the fatal crash. Carranza stipulated that his BAC was .10 at the time of the test. He also admitted to Officer Garcia he had had a few drinks and claimed he had taken an Ambien. Garcia testified that Carranza had red, watery eyes, slightly slurred speech, and the odor of alcohol on his breath. Finally, while Carranza told Officer Talavera he had only had five drinks that night, a receipt recovered from Great American showed he had purchased a bucket of beer and sixteen other drinks. Based on this evidence, we have fair assurance Martinez's testimony regarding Carranza's possible BAC at the time of the accident had but a slight effect, if any, on the jury. *See Solomon*, 49 S.W.3d at 365. Accordingly, even if the error were preserved for review, the error would be disregarded. Issue Four is overruled.

## Ineffective Assistance of Counsel

In Issues Five through Eleven, Carranza contends he received ineffective assistance of counsel for alleged acts and omissions by his trial counsel. Issues Five, Nine, Ten, and Eleven were presented to the trial court in Carranza's motion for new trial. Issues Six, Seven, and Eight are before us on direct appeal.

### *Standard of Review*

A criminal defendant is entitled to be represented by effective, competent counsel under the Sixth Amendment to the United States Constitution. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To succeed on a claim of constitutionally ineffective assistance, a defendant must show by a preponderance of the evidence that his counsel's performance fell below an objective standard of reasonableness. *Cavitt v. State*, 507 S.W.3d 235, 248 (Tex.App.—Houston [1st Dist.]

2015, pet. ref'd)(citing *Strickland*, 466 U.S. at 687-88). That is, the appellant must prove that there was no plausible professional reason for a specific act or omission by counsel. *Bone v. State*, 77 S.W.3d 828, 836 (Tex.Crim.App. 2002). If counsel was deficient, we determine whether there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different. *Id.*; *Adekeye v. State*, 437 S.W.3d 62, 73 (Tex.App.—Houston [14th Dist.] 2014, pet. ref'd). An appellant's failure to satisfy either prong defeats a claim of ineffective assistance of counsel. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex.Crim.App. 2001)(citing *Strickland*, 466 U.S. at 697). Absent evidence of counsel's strategic motivations for his actions at trial, we indulge a strong presumption that counsel rendered adequate assistance and that his actions were a result of a sound trial strategy. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex.Crim.App. 1999).

We review a trial court's denial of a motion for new trial for abuse of discretion and will reverse only if no reasonable view of the record could support the trial court's ruling. *Burch v. State*, 541 S.W.3d 816, 820 (Tex.Crim.App. 2017)(*citing Freeman v. State*, 340 S.W.3d 717, 732 (Tex.Crim.App. 2011)). This is a deferential standard, and it requires us to view the evidence in the light most favorable to the trial court's ruling. *Id*. We must uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Id*.

### *Analysis*

#### *Ineffective Assistance During Voir Dire (Issue Five)*

In his fifth issue, Carranza argues his counsel was ineffective for failing to ask certain questions during voir dire. Specifically, he contends counsel was ineffective for (1) failing to ask the venire if it would hold him to a higher standard because he was a law enforcement officer; (2) failed to discuss issues related to drinking and driving and intoxication levels; and (3) did not

25

discuss issues related to punishment.

In his motion for new trial, Carranza questioned his trial counsel on his alleged failure to ask questions on these topics. Trial counsel agreed these questions might have been strategically helpful, but claimed he thought he was "losing contact with the jurors" and felt that he could potentially upset them by drawing additional attention to these topics. Upon further questioning, he agreed with Carranza that he had no strategic reason for failing to discuss these topics. The trial court denied the motion for new trial.

Selecting a jury is a highly strategic matter. *Wilson v. State*, 15 S.W.3d 544, 552 (Tex.App.—Dallas 1999, pet. ref'd). The failure to ask certain questions must amount to behavior that is so outrageous that no competent attorney would have engaged in it to be considered deficient performance. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex.Crim.App. 2005). The mere fact that another attorney may have pursued a different tactic at trial is insufficient to prove a claim of ineffective assistance. *Scheanette v. State*, 144 S.W.3d 503, 509 (Tex.Crim.App. 2004)(*citing McFarland v. State*, 845 S.W.2d 824, 844 (Tex.Crim.App. 1992), *cert. denied*, 508 U.S. 963 (1993)).

Contrary to Carranza's assertions, trial counsel did ask the venire members whether they thought law enforcement officers should be held to a higher standard. The State also told the venire that the fact that Carranza was law enforcement should not make a difference at all in their decision on guilt. On the topic of a defendant testifying, the State explained in detail to the venire that a defendant has an absolute right to not testify under the Fifth Amendment and that jurors could not consider Carranza's choice to not testify "for any purpose." The Court of Criminal Appeals has held it can be a legitimate trial strategy to not ask questions during voir dire on topics

26

already covered by the State.   *Goodspeed*, 187 S.W.3d at 392 (holding that counsel's performance was not deficient when he failed to ask any questions during voir dire because, under the appropriate circumstances, it can be a legitimate trial strategy to decline to ask questions already covered by the prosecution).   Further, while counsel did not ask questions on all the topics Carranza now complains of, he did give a strategic reason for not doing so: he did not want to draw the venire's attention to these matters and felt that covering topics already covered by the State would make the venire feel he was wasting their time.   While counsel, upon further questioning, subsequently claimed during the motion for new trial that he had no strategic reason for these alleged omissions, the trial court was free as the sole judge of the credibility of the witnesses to believe or disbelieve the testimony of trial counsel.   *State v. Arizmendi*, 519 S.W.3d 143, 165 (Tex.Crim.App. 2017)(holding a reviewing court must defer to the trial court's credibility determinations).   Based on the record before us, we cannot conclude that the trial court's decision to deny Carranza's motion for new trial on this basis was outside the zone of reasonable disagreement.   *Burch*, 541 S.W.3d at 820.   Issue Five is overruled.

*Ineffective Assistance for Failure to Exclude Evidence (Issue Nine)*

In Issue Nine, Carranza argues his trial counsel was ineffective for failing to exclude State's expert Martinez's testimony on retrograde extrapolation of BAC.   He acknowledges counsel objected to Martinez's testimony but argues counsel should have requested a hearing outside the presence of the jury because a hearing may have helped counsel exclude the testimony.

When asked during the motion for new trial why he had not requested a hearing, counsel stated he believed Martinez had used sufficient factors in her calculations to ensure that the testimony was reliable and therefore admissible.   But counsel also stated at the hearing that their

27

trial strategy was, essentially, to focus exclusively on causation rather than intoxication. Counsel provided several reasons for this focus. One was that Carranza was charged with both intoxication manslaughter and manslaughter, and so their focus was on proving the accident was unavoidable, regardless of intoxication. Counsel also stated they had decided against focusing on the intoxication element because Carranza's BAC was .10 three hours after the collision. He stated they had considered attacking the intoxylzer results but decided against it because Lopez's blood had been drawn by the same machine and part of their strategy on causation was to show Lopez was inebriated at the time; thus, to attack the validity of the intoxylzer results was to attack the correctness of the analysis of Lopez's BAC. Counsel also testified he had made a strategic decision to attack the retrograde-extrapolation results themselves as being imprecise by pointing out that Martinez gave a wide range of possible BAC levels for Carranza at the time of the crash, thus illustrating to the jury its accuracy was questionable. Accordingly, counsel provided several plausible professional reasons for his actions before now complained of. *Bone*, 77 S.W.3d at 836. While Carranza argues that his counsel was incompetent because he testified he did not have as firm a grasp on the reliability elements of retrograde extrapolation as he should have, the trial court was free to discredit this testimony and we must defer to its credibility determinations. *Arizmendi*, 519 S.W.3d at 165. Accordingly, the trial court did not abuse its discretion in denying Carranza's motion for new trial on this ground. Issue Nine is overruled.

*Failure to Object to Evidence Regarding Status as Intoxilyzer Operator (Issue Ten)*

In his tenth issue, Carranza contends his counsel was ineffective for failing to object to testimony regarding Carranza's status as a certified intoxilyzer operator and failing to object to the training he would have received as an operator. While Carranza acknowledges counsel objected

28

to the introduction of his certification and to the introduction of the intoxilyzer training manual, he contends he was deficient for failing to object to the underlying facts regarding the manual and certification. Carranza took around two hours to return to the scene of the accident. He claimed the reason for his delayed return was because he had trouble reentering eastbound Spur 601 and because he was having mechanical difficulties with his truck. During his opening statement, he told the jury the evidence would show Spur 601 was exceptionally difficult to navigate, that he had to stop a Carl's Jr. to let his vehicle cool down, and that he was cooperative when he returned to the scene. He subsequently introduced evidence of Spur 601's alleged navigational difficulties and testimony that he had been cooperative. During the guilt or innocence phase, the State presented testimony that Carranza was a certified peace officer and a trained intoxilyzer operator on the day of the fatal crash. It also introduced testimony he had been trained in the basics of how alcohol is absorbed in the body, how it is distributed in the body, and how it is eliminated. Finally, the State's witness, who had trained Carranza, testified Carranza had been taught that it was best practice to obtain an intoxylzer sample within two hours of the time of arrest due to alcohol-elimination rates. During closing arguments, the State argued that Carranza did not call 911 after the accident and waited two hours to return to the scene because he was intoxicated and knew about the two-hour intoxilyzer sample window. At the hearing on the motion for new trial, counsel agreed that he should have objected that the evidence was irrelevant and more prejudicial than probative, and he stated he had no strategic reason for omitting to do so.

To successfully argue counsel was ineffective for failing to object to the introduction of evidence, an appellant must show that the trial court would have committed error in overruling such an objection. *Vaughn v. State*, 931 S.W.2d 564, 566 (Tex.Crim.App. 1996). Evidence is

relevant if: (1) it has any tendency to make a fact more or less probable than it would be without the evidence; and (2) the fact is of consequence in determining the action. TEX.R.EVID. 401. Otherwise relevant evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice. TEX.R.EVID. 403. "Unfair prejudice" refers to a tendency to suggest a decision on an improper basis, usually an emotional one. *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex.Crim.App. 2006). Rule 403 carries with it a presumption that evidence will be more probative than prejudicial. *Gallo v. State*, 239 S.W.3d 757, 762 (Tex.Crim.App. 2007).

Evidence that Carranza was a trained intoxilyzer operator, knew about alcohol elimination rates, and received training on the best practices for obtaining a sample was relevant because it helped to make a fact of consequence more probable: that his failure to return immediately to the scene was an attempt give his body time to eliminate alcohol and to reduce the likelihood of an effective intoxilyzer reading of his BAC. This evidence was also probative of Carranza's consciousness of guilt, as it tended to explain his reason for waiting nearly two hours to return to the scene. *See Bartlett v. State*, 270 S.W.3d 147, 153 (Tex.Crim.App. 2008)(holding a defendant's refusal to submit to an intoxilyzer was probative and relevant because it tends to show a consciousness of guilt). Rule 403 carries with it a presumption that evidence will be more prejudicial than probative, and while Carranza generally asserts this evidence had a tendency to suggest a decision on an improper basis, the only evidence he has pointed to supporting this assertion is the fact that he received a seventeen-year prison sentence. We therefore cannot say the trial court would have abused its discretion in overruling a Rule 401 or 403 objection to this evidence. Accordingly, the trial court did not abuse its discretion in overruling Carranza's motion

30

for new trial.   Issue Ten is overruled.

*Failure to Object to the Receipt from Great American (Issue Eleven)*

In his eleventh issue, Carranza contends his counsel rendered ineffective assistance in failing to object to the admission of the receipt from Great American on the grounds that it was hearsay, improperly authenticated, and irrelevant.   He also contends his counsel should have objected that the receipt's introduction violated his right to confrontation.

Agent David Ianni of the Texas Alcoholic Beverage Commission, who produced the receipt from Great American, testified that: (1) the TABC keeps records of the sale of alcohol and liquors at bars and restaurants in the state; (2) the receipt was a record normally kept by TABC as part of their regular business; and (3) the records were made by someone who had personal knowledge of the recorded drink purchases at or near the time of the event.   At the hearing on the motion for new trial, counsel testified that he should have objected to the receipt on the grounds that it was hearsay in that it did not meet the business records exception.   He also agreed he should have objected on the grounds of relevance and confrontation and that he did not have a strategic reason for failing to do so—he claimed he simply did not think of it.   On cross-examination, counsel agreed the receipt was consistent with the type of drinks Carranza had claimed he consumed that evening.

Carranza's contention his counsel should have objected that the receipt was irrelevant is meritless; the receipt was relevant because it tended to show how many and what types of alcoholic drinks Carranza had on the night of the accident and tended to discredit Carranza's assertion to Officer Talavera that he had had only five drinks that evening.   *See* TEX.R.EVID. 401.

As to the business-records exception to hearsay, the rule provides that a record is excepted

31

if:

> (1) the record was made at or near the time by—or from information transmitted by—someone with knowledge;
>
> (2) the record was kept in the course of a regularly conducted business activity;
>
> (3) making the record was a regular practice of that activity;
>
> (4) all these conditions are shown by the testimony of the custodian or another qualified witness, or by an affidavit or unsworn declaration that complies with Rule 902(10); and
>
> (5) the opponent fails to demonstrate that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. 'Business' as used in this paragraph includes every kind of regular organized activity whether conducted for profit or not.

TEX.R.EVID. 803(6).

Carranza asserts the document was not in fact a business record of TABC and therefore there was no valid hearsay exception; thus, counsel should have objected. Agent Ianni testified: (1) the record was made by someone with personal knowledge at the time of the event; (2) the receipt was kept and maintained by TABC as part of their regular business; (3) and making the receipt was part of TABC's regular activity of keeping records of restaurant and bar alcohol sales for the state. Agent Ianni testified the TABC obtained the receipt as part of his investigation. Carranza has not attempted to demonstrate that the source of the receipt indicated a lack of trustworthiness. Accordingly, the trial court would not have abused its discretion in overruling an objection to its admission.

Finally, as to Carranza's confrontation contention, the Confrontation Clause does not bar the admission of non-testimonial statements. *Infante v. State*, 404 S.W.3d 656, 664 (Tex.App.— Houston [1st Dist.] 2012, no pet.)(*citing Sanchez v. State*, 354 S.W.3d 476, 485 (Tex.Crim.App.

2011)). Generally, documents filed in compliance with the business-records exception are non-testimonial because the records were created for the administration of an entity's affairs and not for the purpose of proving a fact at trial. *Id.*, (*citing Bullcoming v. New Mexico*, 564 U.S. 647, 659 (2011)). Because the receipt met the business-records exception, the trial court would not have abused its discretion in overruling an objection to its introduction.

Accordingly, because the evidence complained of was admissible, he has failed to demonstrate deficient performance by his trial counsel. *Vaughn*, 931 S.W.2d at 566 (counsel is not deficient for failing to object to evidence the trial court would not have abused its discretion in overruling). Issue Eleven is overruled.

*Failure to Secure Jury Charge Instruction on Concurrent Causation (Issue Six)*

In his sixth issue, Carranza contends his counsel was ineffective for failing to request an instruction on concurrent causation in the application paragraph of the jury charge. He contends he was prejudiced by this failure because it prevented the jury from considering his only defensive issue. He also contends he suffered prejudice because he would have only needed to demonstrate some harm on appeal to obtain a reversal if he had objected and the trial court overruled his objection. Carranza did not question his attorney on this alleged omission at the hearing on his motion for new trial.

Demonstrating ineffective assistance of counsel on direct appeal is difficult given that the reasonableness of counsel's decisions often involves facts which are not in the record. *See Rylander v. State*, 101 S.W.3d 107, 110 (Tex.Crim.App. 2003)("We have previously stated that the record on direct appeal will generally 'not be sufficient to show that counsel's representation was so deficient as to meet the first part of the *Strickland* standard' as '[t]he reasonableness of

33

counsel's choices often involves facts that do not appear in the appellate record.'")(*quoting Mitchell v. State*, 68 S.W.3d 640, 642 (Tex.Crim.App. 2002)). As already noted, absent evidence of counsel's strategic motivations for particular actions at trial, we indulge a strong presumption that counsel rendered adequate assistance and that his actions were a result of a sound trial strategy. *Thompson*, 9 S.W.3d at 813.

As was discussed in Issue Four, Carranza cannot show he was prejudiced—that is, the outcome of the trial would have been different—by the exclusion of an instruction on concurrent causation in the application paragraph. The abstract portion of the charge contained a definition which tracked the statute, and the jury was instructed in the application paragraph it had to find Carranza's intoxication caused Lopez's death beyond a reasonable doubt. The evidence presented did not tend to show that Carranza's conduct was clearly insufficient, by itself, to have caused Lopez's death or that Lopez's conduct, by itself, was clearly insufficient. Both parties repeatedly laid out the law of concurrent causation before the jury, presented evidence on the issue, and informed the jury what would be shown regarding that defensive theory. Because the jury was repeatedly—and correctly—told what the law of concurrent causation was, including in the abstract portion of the jury charge, its exclusion from the application paragraph did not vitally affect Carranza's defensive theory. *See Warner*, 245 S.W.3d at 461–62.

As to Carranza's contention he was prejudiced by his counsel's failure to object because his burden on appeal would have been lesser if the objection had been overruled, he has cited no authority for this proposition. While novel, Carranza's argument presupposes a fact which did not occur and is not supported by the record: that had counsel objected to the failure to include an instruction on concurrent causation, the trial court would have overruled his objection. Only if

34

his objection were overruled would our review have been the "some harm" standard he now claims he was denied. *Almanza*, 686 S.W.2d at 171. Carranza has pointed to nothing in the record to demonstrate the trial court would have overruled such an objection; accordingly, he has failed to demonstrate prejudice. Thus, even if counsel were deficient for failing to object to the omission of an instruction on concurrent causation in the application paragraph, Carranza's failure to demonstrate prejudice defeats his claim of ineffective assistance of counsel. *Garcia*, 57 S.W.3d at 440. Issue Six is overruled.

*Failure to Secure Jury Charge Instruction on Concurrent Causation (Issue Seven)*

In his seventh issue, Carranza contends his counsel performed deficiently for failing to object to the trial court's failure to include an abstract definition of intoxication manslaughter. He alleges he was prejudiced because the jury lacked the proper tools to consider his defense. He did not question trial counsel on this issue at the hearing on the motion for new trial.

Carranza has not demonstrated how he was prejudiced by this alleged deficiency other than his single assertion that the jury lacked the proper tools to consider his defense. But as we discussed in Issue Two, the application paragraph properly instructed the jury it must find beyond a reasonable doubt that: (1) Carranza; (2) while operating a motor vehicle in a public place; (3) was intoxicated; and (4) because of that intoxication; (5) killed Lopez by accident or mistake. Because this tracks the statutory elements of the offense of intoxication manslaughter, absent more, Carranza has failed to show prejudice from trial counsel's failure to request a definition of intoxication manslaughter in the abstract. *See* TEX.PENAL CODE ANN. § 49.08(a). Failure to show prejudice precludes relief. *Garcia*, 57 S.W.3d at 440. Issue Seven is overruled.

*Failure to Object to Alleged Misstatements Regarding Concurrent Causation (Issue Eight)*

In his eighth issue, Carranza contends his attorney performed deficiently for failing to object to several statements by the State on intoxication manslaughter, which he alleges were erroneous statements of law. He did not question trial counsel on this alleged failure during the hearing on the motion for new trial.

Counsel is presumed to have rendered professional assistance, and we cannot speculate that no plausible professional reason exists for a specific act or omission. *Bone*, 77 S.W.3d at 836. If the record is silent as to the facts, circumstances, and rationale behind an attorney's actions or omissions, we are compelled to find the defendant did not rebut the presumption of reasonable assistance. *Thompson*, 9 S.W.3d at 814. Furthermore, counsel is not ineffective for failing to object to proper statements by the State. *See Mooney v. State*, 817 S.W.2d 693, 698 (Tex.Crim.App. 1991)(holding counsel is not required to engage in futile acts to render effective assistance).

Carranza contends the State misstated the law of concurrent causation and intoxication manslaughter several times during trial and closing. Essentially, his contention is that several instances in which the State defined intoxication manslaughter as "driving while intoxicated that *resulted* in death," were misstatements because the State used the word "resulted" instead of "caused." [Emphasis added]. He then contends the State misstated the law on concurrent causation during closing by stating several times that it does not matter that Lopez was intoxicated as long as Carranza's intoxication was a cause, by whatever attributable percentage, of Lopez's death. Neither of these statements are misstatements of the law, and counsel is not ineffective for failing to object to proper statements. *Mooney*, 817 S.W.2d at 698. More importantly, however, is that the record is silent as to the rationale behind Carranza's attorney's failure to object to any

36

of the alleged misstatements because counsel was not questioned on them in the motion for new trial. Because the record is silent regarding counsel's motivations, we cannot presume no plausible professional reason existed for not objecting to the State's arguments. *Thompson*, 9 S.W.3d at 814. Accordingly, Carranza has failed to demonstrate ineffective assistance. Issue Eight is overruled.

## CONCLUSION

Having overruled Issues One through Eleven, the decision of the trial court is hereby affirmed.

May 22, 2019

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

37